**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JORDAN THOM**                                                           **PLAINTIFF**

**v.**                                            **CIVIL ACTION NO.: 1:25-cv-13-TBM-RPM**

**WEST PHYSICS CONSULTING, LLC**                              **DEFENDANT**

**AFFIDAVIT OF JORDAN THOM**

1. My name is Jordan Thom. I am over the age of eighteen years old. I state the following based upon my own personal knowledge and am competent to testify as to these matters.

2. I am a 27-year-old female, and I currently reside in Mobile County, Alabama.

3. I was hired on April 26, 2023, as a Medical/Health Physicist at West Physics Consulting, LLC (WPC) with a salary of $80,000 per year and was told by WPC that I was being hired for a permanent full-time position because they had so many clients in the region they hired me to work in.

4. WPC assigned me to work in its "Gulf States Field Office" region and my assigned territory consisted of medical facilities south of I-10 in Mississippi, Alabama, and the panhandle of Florida as well as the entire State of Louisiana. *See* Chart - West Physics Technical Regions, a copy of which is attached as Exhibit "1."

5. Because I had only recently graduated from the University of Alabama at Birmingham in May of 2023, I did not meet the training requirements for licensure in Florida.

EXHIBIT B

6. As a result, WPC determined that I would support clients in Biloxi, Mississippi as well as the area north of Biloxi, in addition to Mobile, Alabama which were previously supported by Clinton Gray who lived in Alabama.

7. As a condition of my hiring, WPC required me to establish a residence in Biloxi, Mississippi.

8. Due to WPC's non-negotiable requirement that I reside in Biloxi, Mississippi, I signed a 12-month lease on an apartment at Lagniappe of Biloxi, 831 Cedar Lake Road, Biloxi, Mississippi 39532 with an obligation to pay rent in the amount of approximately $1,482 a month plus utilities.

9. Due to the excessive cost, I requested to live at home in Mobile, Alabama but WPC told me that they already had someone (Clinton Gray) living in Alabama and that I was required to live in Biloxi, Mississippi as a condition of employment.

10. Thus, I was employed by WPC in the State of Mississippi during my entire tenure with WPC.

11. WPC also required me to rent automobiles for work-related travel from WPC's approved car rental location, Enterprise Rent-A-Car located in D'Iberville, Mississippi.

12. As a new resident of Mississippi, WPC required that state payroll taxes for the State of Mississippi be withheld from my regular paychecks on compensation earned from Defendant.

13. WPC's acts of sex discrimination and retaliation which was the subject of my EEOC Charge occurred while I was performing work at the direction of WPC in Mississippi.

14. My co-worker Mehran, who was hired the same day, lived in Louisiana.

15. During WPC's hiring process, I was told by Mark Broomfield and Zubair that I needed to live in Mississippi for at least three years to build positive relations with clients and then I could transfer to another region within the company.

16. It was also discussed that this was a lifelong career I was going to build with WPC and that is what I agreed to, that is what I was looking for.

17. I was not even licensed to work in the state of Florida and had never even discussed getting licensed.

18. WPC is a million-dollar company, and I was repeatedly told that business was booming faster than ever while with this company.

19. Clinton Gray even stated how much they needed help in the region.

20. WPC had the means of employing me whether the business deal that was also discussed went through or not.

21. I do not understand what happened to all of these so-called clients WPC had in its Gulf Coast Field Office region when WPC hired me.

22. I am aware that WPC had to fly a physicist into our region to work which directly contracts WPC's later claims that it was "overstaffed" in the region and did "not enough clients."

23. During my employment with WPC, I worked primarily from home, but also often drove to work locations in Mississippi, Alabama, Florida and Louisiana in a rented vehicle from WPC's approved car rental location, Enterprise Rent-A-Car located in D'Iberville, Mississippi.

24. My primary work contacts in the "Gulf Coast Field Office" region were located along the Gulf Coast south of I-10 stretching from Lake Charles, Louisiana to Panama City, Florida which included territory in the southern parts of Mississippi, Alabama the Florida panhandle and the entire State of Louisiana.

25. My territory included specific medical facilities such as Singing River Hospital System facilities, Ingalls Shipyard and the Mobile Infirmary.

26. These contacts were directly relevant to my work performance, my training assignments, and my interactions with WPC's management team.

27. Any witnesses who can testify regarding my work duties, performance evaluations, and the conditions of my employment are therefore far more likely to be located in or in close proximity to Mississippi and facilities in my assigned Gulf Coast Field Office region than in Georgia.

28. WPC hired Medical/Health Physicist Zeke Gonzales (male) in 2022.

29. On the same day I started my employment with WPC (June 12, 2023), Mehran Nik Ahktar (male) also started at WPC as a Medical/Health Physicist.

30. I, Mr. Gonzales, and Mr. Ahktar all worked in the "Gulf Coast Field Office" region which consisted of Mississippi, Alabama, the panhandle of Florida and Louisiana.

31. Mr. Gonzales, Mr. Ahktar and myself are all around the same age, have similar degrees and similar job titles.

32. During 2022, WPC sent Mr. Gonzales to attend a rigorous training session at the corporate office in Atlanta, Georgia.

33. During or around June 2023, WPC sent Mr. Ahktar to attend the same rigorous training session at the corporate office in Atlanta, Georgia.

34. WPC did not send me to the training session in Atlanta.

35. Instead, I attended a one-week orientation in Atlanta, most of which was done remotely.

36. Following orientation, I began my training in Biloxi, Mississippi which was "conducted" by Clinton Gray who WPC touted as a "twice-boarded medical physicist with 12 years of clinical experience."

37. West Physics claimed that training provided in Atlanta is the same in any other region.

38. I contend that this is false.

39. As being told by Zeke, Mehran, Rosa, Amelia, and Kent, training in Atlanta was a lot more rigorous than what I had.

40. I would sometimes go several weeks without seeing a specific survey.

41. Whereas in Atlanta, where the majority of WPC's physicists and clients are located, I would have been able to have several days/weeks of back-to-back training of the same survey and my training schedule would be made to what works best for me.

42. I was told during my hiring process by Mark Broomfield and Zubair that I could have all the training I wanted and needed and there was no rush for me to get through my training.

43. However, WPC stuck me with Clinton Gray who was rude and belittling to me as a female, who cannot communicate or teach and thought doing something one time was enough and if I were to say "during my hiring process I was told there is no rush on my training, and I can request as much training as I need" he would just look at me with a blank face and say "this is the job".

44. From the very beginning I did not have the same equal opportunity as my male colleagues to succeed in my career.

45. As a female, I deserved the same training in Atlanta with people who know how to communicate and teach and work with others, however, WPC denied me that opportunity.

46. During August 2023, I phoned Vice President of Administrative Services Rosa Larson and engaged in protected activity by complained to her that I was not allowed to attend the same training that my male counterparts (Mr. Gonzales and Mr. Ahktar) were allowed to attend, i.e., in Atlanta.

47. In response to my complaint concerning sex discrimination, Ms. Larson did nothing to address the situation.

48. On October 13, 2023, I met with Health Physicist Amelia Miller and Remote Services Manager Kent Fisher.

49. During that meeting, I again engaged in protected activity and complained that I had not received the same training as her male counterparts, Mr. Gonzales and Mr. Ahktar, even though I had previously complained about this to Ms. Larson.

50. In response, Ms. Miller and Mr. Fisher stated that they would address my complaints of sex discrimination on my behalf with Human Resources.

51. On October 30, 2023, Director of Human Resources Sandy Boerstler informed me that I was terminated.

52. At that time, Ms. Boerstler alleged that the WPC investors said the numbers in my region were not good, so they were letting her go.

53. I contend this allegation is false and the company has been very successful in my region.

54. After I was allegedly laid off, I became aware that my position was replaced by a male employee, Chandler Cotton.

55. On January 24, 2024, I filed an EEOC Charge of sex discrimination and retaliation against WPC.

56. In response to my EEOC Charge, WPC submitted a Position Statement to the EEOC.

57. WPC's Position Statement alleges that "Plaintiff references 'rigorous training' sessions in Atlanta. The training provided in Atlanta for medical/health physicists is identical to the training provided in other parts of the country."

58. I contend that this allegation is false.

59. In my discussions with Mr. Gonzales, and Mr. Ahktar, I compared my training experience with Chief Medical Physicist & Regional Director Clinton Gray to their (Mr. Gonzales' and Mr. Ahktar's) experiences in Atlanta, and their experiences were clearly superior to mine in terms of detailed and comprehensive training.

60. Whereas Mr. Gray typically showed me something only one time, my male peers were allowed to work on a given survey multiple times over the course of several days.

61. WPC's Position Statement also alleges that "During her tenure with West Physics, Plaintiff never approached anyone in the company, including HR, complaining of gender discrimination. The only hinderance to her training was her consistent tardiness (Exhibit 8). At no time did she follow the guidelines as explained in our handbook, which

she acknowledged receipt of, to issue a complaint regarding gender discrimination (Exhibit 9)."

62. I contend this allegation is false.

63. As stated above, during August 2023, I phoned Vice President of Administrative Services Rosa Larson and complained to her that she (Plaintiff) was not allowed to attend the same training that her male counterparts (Mr. Gonzales and Mr. Ahktar) were allowed to attend, i.e., in Atlanta.

64. Additionally, as stated above, on October 13, 2023, I met with Health Physicist Amelia Miller and Remote Services Manager Kent Fisher. During that meeting, I again engaged in protected activity and complained that I had not received the same training as my male counterparts, Mr. Gonzales and Mr. Ahktar, even though I had previously complained about this to Ms. Larson.

65. In response to my additional complaint of sex discrimination, Ms. Miller and Mr. Fisher stated that they would address my complaints of sex discrimination on my behalf with Human Resources.

66. I never received any additional communication from WPC in response to my two separate complaints of sex discrimination.

67. Following my termination by WPC, I still was required by my lease with Lagniappe of Biloxi to pay rent for November and December of 2023 (approximately $1,482 a month plus utilities) and was forced to pay a penalty of $8,000 in order to buy out the remainder of my lease term.

68.     I incurred additional expenses consisting of having my furniture moved out of the apartment at a cost of approximately $1,200 and placed in a storage unit at a cost of approximately $200 a month.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the above and foregoing is true and correct as therein stated.

Further Affiant saith not.

Executed, this the 28th day of April, 2025.

*Jordan Thom*
_____
JORDAN THOM


🔒 Document Completion Certificate

```
Document Reference   : df9f3478-d50b-4a92-9662-29ef3ca05eea
Document Title       : Affidavit of Jordan Thom
Document Region      : Northern Virginia
Sender Name          : Louis Watson
Sender Email         : louis@watsonnorris.com
Total Document Pages : 9
Secondary Security   : Not Required
Participants

  1. Jordan Thom (thomjordan22@yahoo.com)
```

## Document History

| Timestamp | Description |
|---|---|
| 04/29/2025 12:05AM UTC | Sender downloaded document. |
| 04/29/2025 12:06AM UTC | Document sent by Louis Watson (louis@watsonnorris.com). |
| 04/29/2025 12:06AM UTC | Email sent to Jordan Thom (thomjordan22@yahoo.com). |
| 04/29/2025 12:06AM UTC | Email sent to Louis Watson (louis@watsonnorris.com). |
| 04/29/2025 12:07AM UTC | Document viewed by Jordan Thom (thomjordan22@yahoo.com). 108.87.115.3 Mozilla/5.0 (iPhone; CPU iPhone OS 18_4_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/18.4 Mobile/15E148 Safari/604.1 |
| 04/29/2025 12:14AM UTC | Jordan Thom (thomjordan22@yahoo.com) has agreed to terms of service and to do business electronically with Louis Watson (louis@watsonnorris.com). 108.87.115.3 Mozilla/5.0 (iPhone; CPU iPhone OS 18_4_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/18.4 Mobile/15E148 Safari/604.1 |
| 04/29/2025 12:14AM UTC | Signed by Jordan Thom (thomjordan22@yahoo.com). 108.87.115.3 Mozilla/5.0 (iPhone; CPU iPhone OS 18_4_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/18.4 Mobile/15E148 Safari/604.1 |
| 04/29/2025 12:14AM UTC | Document copy sent to Jordan Thom (thomjordan22@yahoo.com). |
| 04/29/2025 12:14AM UTC | Document copy sent to Louis Watson (louis@watsonnorris.com). |